## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MILADY SIMPSON,

     Plaintiff,

v.                               Case No: 8:22-cv-892-CEH-SPF

SPECIALIZED LOAN SERVICING,
LLC and WILMINGTON SAVINGS
FUND SOCIETY,

     Defendants.

_____

### <u>ORDER</u>

This cause comes before the Court on Defendants Specialized Loan Servicing, LLC and Wilmington Savings Fund Society's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 11).  In this action, Plaintiff Milady Simpson, who is proceeding *pro se*, alleges various claims related to a mortgage foreclosure Plaintiff asserts was unlawful. Doc. 8.  Defendants argue the Amended Complaint must be dismissed with prejudice because it is a shotgun pleading and it fails to state a cause of action. Doc. 11.  Plaintiff has not responded in opposition.

Upon review and consideration, the Court will grant Defendants' Motion to Dismiss and dismiss the Amended Complaint.  Plaintiff will be granted one final opportunity to amend, but must also show cause as to why the action should not be dismissed for failure to prosecute.

## BACKGROUND

On February 28, 2022, Plaintiff filed a complaint against Specialized Loan Servicing, LLC ("SLS"), in the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida, alleging thirteen causes of action. Docs. 1, 1-1.  Defendant timely removed the action because some causes of action asserted a federal question. Doc. 1.  Plaintiff subsequently filed an Amended Complaint that named Wilmington Savings Fund Society ("Wilmington") as a second defendant. Doc. 8.

Defendants now move for dismissal of the Amended Complaint, arguing that it is a shotgun pleading, and that Plaintiff fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 11.  Defendants explain that Wilmington obtained a final judgment of foreclosure against Plaintiff in a Polk County action on February 2, 2022, and they assert that Plaintiff has brought the instant action in an effort to unwind the judgment. *Id.* at 6.  Defendants also point out that much of the Amended Complaint was copied directly from a complaint that the Florida Attorney General's Office filed against a foreclosure-rescue service company in an entirely unrelated action called *State of Florida, Office of the Attorney General, Department of Legal Affairs v. Winberg, Lopez & Rodriguez, P.A.*, No. 2009-CA-7960, which was filed in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida in 2009. *Id.* at 5; Doc. 11-1.

Plaintiff has not responded to Defendant's motion.  On January 19, 2023, the Court gave Plaintiff an additional opportunity to respond, directing her to do so within twenty-one days. Doc. 18.  The Court's Order and an additional copy of Defendant's

motion were mailed to her, and the mail was not returned to sender.  Plaintiff failed to file any response.[1]  The motion is therefore subject to treatment as unopposed.  *See* Local Rule 3.01(c), Middle District of Florida (a party may respond to a motion to dismiss within twenty-one days after service of the motion; if a party fails to timely respond, the motion is subject to treatment as unopposed); *see also*, *e.g.*, *West Coast Group Enterprises, LLC v. Darst as Trustee of G.A. Darst Equity Trust*, 561 F.Supp.3d 1180, 1184 (M.D. Fla. Sept. 22, 2021) (Mizelle, J.) (treating a motion to dismiss to which cross-plaintiffs did not respond as unopposed under Local Rule 3.01(c)).  Although the motion is unopposed, the Court will assess the merits of Defendants' arguments.

## DISCUSSION

### A. Shotgun Pleading

First, Defendants argue that the Amended Complaint is due to be dismissed as a shotgun pleading.  Complaints that violate either Rule 8(a)(2) or Rule 10(b) of the Federal Rules of Civil Procedure are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).  "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *see Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) ("A complaint that fails

---

[1] According to a notice filed by the court-assigned mediator, Plaintiff has also failed to participate in mediation. *See* Doc. 19.

to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'").

The Eleventh Circuit has identified four general types of shotgun pleadings:

> (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) "a complaint ... replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint "that commits the sin of not separating into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

*Burke v. Custom Marine Grp.*, 847 F. App'x 578, 580-81 (11th Cir. 2021), citing *Weiland*, 792 F.3d at 1321-23.

When faced with a shotgun pleading, a court should strike the complaint and instruct the plaintiff to file a more definite statement. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 984 (11th Cir. 2008) (collecting cases), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Eleventh Circuit repeatedly condemns the use of shotgun pleadings for "imped[ing] the administration of the district courts' civil dockets." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 806 n.4 (11th Cir. 2010). Shotgun pleadings require the district court to sift through allegations in an attempt to separate the meritorious claims from the unmeritorious, resulting in a "massive waste of judicial and private resources." *Id.* (internal quotation

marks omitted).  Thus, the Eleventh Circuit has established that a shotgun pleading is an unacceptable form of pleading.

Here, the Amended Complaint is the first type of shotgun pleading, because each of Plaintiff's counts incorporates all preceding paragraphs, including prior counts, which results in the final count constituting a culmination of the entire Amended Complaint. *See* Doc. 8 ¶¶ 28, 41, 48, 55, 67, 110, 117, 125, 131, 135, 150, 140, 159, 165.  Some of the counts incorporate all subsequent paragraphs as well. *See id.* ¶ 140, 150.  The Amended Complaint is also the second and fourth types of shotgun pleading: it makes vague references to an unidentified individual named Roy Bostick, who is not named as a party, it includes a vague and immaterial claim under a Pennsylvania statute, and it repeatedly refers to "Defendants" in the plural without stating which party's acts or omissions it is referring to.  Indeed, the Complaint alleges no specific conduct by Wilmington.

On April 22, 2022, the Court dismissed the Complaint as a shotgun pleading for the reasons described above, and granted Plaintiff leave to file an amended complaint that corrected the identified deficiencies. Doc. 6.  The Court explained in detail the manner in which Plaintiff's Complaint was improperly pleaded, and directed her toward resources available for *pro se* litigants. *Id.*  Plaintiff timely filed an Amended Complaint. Doc. 8.  However, the Amended Complaint failed to cure the vast majority of the deficiencies identified in the Court's Order, including those described above.

In the instant motion, Defendants move for dismissal of the Amended Complaint with prejudice. Doc. 11 at 12-13.  In addition to the reasons described *supra*,

Defendants point out that the Amended Complaint is also a shotgun pleading because it relies on facts from a separate, unrelated case, and fails to plead any facts that specifically refer to Defendants' alleged actions. *Id.* Plaintiff has not responded to Defendants' motion, nor has she requested the opportunity to amend her complaint a second time to cure its deficiencies.

The Eleventh Circuit recently reiterated that dismissal with prejudice on shotgun pleading grounds is proper if a plaintiff files an amended complaint afflicted with the same defects. *Halstead v. Espinoza*, No. 21-13356, 2023 WL 2399288 (11th Cir. March 8, 2023) (unpublished), citing *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1358-59 (11th Cir. 2018) ("Here, after being put on notice…of the specific defects in their complaint, the Jacksons filed an amended complaint afflicted with the same defects, attempting halfheartedly to cure only one of the pleading's many ailments… The District Court should have dismissed the amended complaint with prejudice because, as we have concluded the amended complaint was incomprehensible"; also noting dismissal would have been warranted under Rule 41(b) for failure to obey a court order).  However, in light of Plaintiff's *pro se* status, the Court will dismiss the Amended Complaint without prejudice and provide Plaintiff a final opportunity to cure the defects identified in this Court's April 22, 2022 Order as well as those described below.

**B. Failure to State a Claim Upon Which Relief Can Be Granted**

In the alternative, the Court finds that most counts of the Amended Complaint are due to be dismissed because, to the extent the allegations can be understood, they

fail to state a claim upon which relief can be granted.[2]  Defendants argue, pursuant to Federal Rule of Civil Procedure 12(b)(6), that the Amended Complaint is based entirely on factual allegations from an unrelated action and conclusory assertions that are insufficient to state a claim that is plausible on its face. Doc. 11 at 12.  Defendants also contend that most of Plaintiff's claims are barred by res judicata or the *Rooker-Feldman* doctrine because they amount to an improper attempt to challenge the state court judgment of foreclosure. *Id.* at 8-9.  Finally, Defendants make specific arguments that the allegations for Counts I, III, IV, and X are insufficient. *Id.* at 7-8, 10-11.

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009), quoting Fed. R. Civ. P. 8(a)(2).  Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere naked assertions are also insufficient. *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation

---

[2] Defendants also assert that dismissal is warranted pursuant to 28 U.S.C. § 1915(e)(2) because the Amended Complaint is frivolous. Doc. 11 at 3-4.  However, this statute applies to individuals who have moved to proceed *in forma pauperis. Id.* at 3, citing *Lozano v. Bank of Ozarks*, 2:20-cv-932, 2021 WL 3077872, *1-2 (M.D. Fla. July 21, 2021) ("The mandatory language of 28 U.S.C. § 1915 applies to all proceedings *in forma pauperis.*").  Defendants have not established that Plaintiff falls within this category, such that § 1915(e)(2) applies to her.

omitted).   The Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*   Overall, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

### 1. *Factual Allegations and Extrinsic Evidence*

A threshold question that arises in this action is which factual allegations and evidence the Court may consider in determining whether Plaintiff has plausibly stated a claim for relief in the Amended Complaint.   Defendants contend that Plaintiff has failed to state a claim because her factual allegations have been taken from another complaint, as proven by extrinsic evidence, and because the exhibits to their motion to dismiss demonstrate that she failed to seek proper appellate relief after the foreclosure she now attempts to challenge. Doc. 11 at 12.

With respect to the unrelated case,[3] the Court takes judicial notice that many factual allegations in the Amended Complaint are identical to those of the complaint

---

[3] *See* Fed. R. Evid. 201(b) (court may take judicial notice of public records that are "not subject to reasonable dispute"); *Horne v. Potter*, 392 F. App'x 800, *802 (11th Cir. 2010) (district court did not err by taking judicial notice of public filings from prior case without converting the motion to dismiss to a motion for summary judgment), citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999).   The Court may take judicial notice at any stage of the proceeding, including the motion to dismiss stage. *See* Fed. R. Evid. 201(d).

Defendants cite to Florida law in asking the Court to take judicial notice of the extrinsic evidence discussed *infra*. Doc. 11 at 8 n.2.   However, the federal rule of judicial notice, contained in Federal Rule of Evidence 201, governs even in this diversity action. *See Stewart Org. v. Ricoh Corp.*, 487 U.S. 22 (1988) (federal procedural statutes govern in federal court); 88 Stat. 1926 (1974) (the procedural statute enacting the Federal Rules of Evidence, including Rule 201).

in *State of Florida v. Winberg et al.*, except that the names of parties in this case have been substituted. *Compare*, *e.g.*, Doc. 11-1 ¶¶ 6-7 *with* Doc. 8 ¶¶ 5-6 (identifying Plaintiff as an "enforcing authority" pursuant to Chapter 501, Part II, Florida Statutes). Defendants highlight one portion of the Amended Complaint, paragraphs 22 to 27, as being lifted almost directly from *Winberg* and being false as to the instant case. These paragraphs are the same in both complaints, each describing identical alleged contents of the defendants' website—at an identical web address—and the same company policies. SLS is identified in this section as a foreclosure-related rescue service just like the defendant in *Winberg*.

Defendants ask the Court to take judicial notice that SLS is not engaged in foreclosure relief services. Doc. 11 at 7-8. They cite to SLS's website so that the Court may "see that Plaintiff's allegation is false" because "SLS is a mortgage servicer." Doc. 11 at 7-8. The Court will not take judicial notice of the contents of a non-government website. *See*, *e.g.*, *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1274 (11th Cir. 2014) (finding no abuse of discretion in the district court's refusal to take judicial notice of a non-government website); *Gaza v. LTD Fin. Servs., L.P.*, No. 8:14-cv-1012, 2015 WL 5009741, *2 (M.D. Fla. Aug. 24, 2015) (Moody, J.) (declining to take judicial notice of screenshots from a website because their authenticity was not beyond question). Nor will the Court consider extrinsic evidence of which it cannot take judicial notice at the motion to dismiss stage; it declines to convert this proceeding to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Even if the Court did consider this evidence, however, the contents of one website do not disprove the allegations that

SLS maintained a different site; nor does the site Defendants refer to conclusively establish that SLS does not offer foreclosure relief. Similarly, the final judgment of foreclosure, which is attached to Defendant's motion and of which the Court may take judicial notice, *see supra* n.3, identifies Wilmington as the owner of the mortgage but does not mention SLS. Doc. 11-3.

On the other hand, even considering only the allegations in the Amended Complaint, its attachments, and the public records of which the Court may take judicial notice, it is likely that the factual allegations in paragraphs 22 to 27 do not apply to the instant action. The allegations of Count II expressly identify SLS as a loan servicer, Doc. 8 ¶¶ 43, 45, as do the documents attached as exhibits to the Amended Complaint. *See*, *e.g.*, Doc. 8-1 at 58-59. Other factual allegations[4] imply that SLS was Plaintiff's mortgage servicer, just as Defendants allege, and that a different entity who is not a party advertised itself as a rescue service. *See* Doc. 8 ¶ 8. Moreover,

---

[4] Paragraph 8 of the Amended Complaint (Doc. 8) contains allegations, written in a different font and in the first person, that appear to be specific to the instant action:

> I took the mortgage out in 2018 as an investment loan since I was still living in Delaware. The same year, I got a divorce and moved into the property. I continued paying the mortgage until 2020 when the Covid-19 pandemic. I wasn't able to work and fell behind on payments. I requested a forbearance from SLS twice and was granted. After the Care Act was passed for extended forbearance, SLS denied my request on or around August 2020. They gave me an option to file for mortgage modification which I did on or around September 2020[.] I followed up with phone calls and was told from October 2020 to February 2021 that it was in review. On March of 2021, I contacted SLS and was told my request had been denied. I then contacted New Vision Mortgage Solutions for help. After months of New Vision solutions work with SLS to come up with a resolution, they again denied the request.

the other allegations that are identical to those of the complaint in *Winberg* are demonstrably false: Plaintiff, unlike the Florida State Attorney General, is not an "enforcing authority" pursuant to Fla. Stat. § 501.203(2), which is defined as the office of the state attorney or the Department of Legal Affairs. *Cf.* Doc. 8 ¶¶ 5-6.  The Court also notes that it strains credulity that the very same website would still be active and operated by a defendant in this case in the exact same manner as it was when *Winberg* was filed in 2009 at the time that Plaintiff filed her complaint in 2022.

However, at this stage the Court cannot assess the veracity of the allegations or determine the merits of the action.  It must view the Amended Complaint in the light most favorable to Plaintiff and assume its factual allegations are true unless they are expressly contradicted by the exhibits to the complaint, which the Court finds is not the case here. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) (citations omitted); *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). The Court will therefore consider all of the factual allegations, and only the extrinsic evidence of which it can take judicial notice, in determining whether Plaintiff has adequately stated a claim under Rule 12(b)(6).

### 2.  *Sufficiency of Each Count*

Defendants contend generally that none of the counts states a claim upon which relief may be granted. Doc. 11 at 12.  They also make specific arguments with respect to several of the counts' sufficiency. *Id.* at 7, 10-11.  The sufficiency of the allegations will be addressed as to each count.

Count I: FDUTPA

Count I is brought under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Fla. Stat. § 501.201 *et seq.*  To state a claim under FDUTPA, a plaintiff must plead three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1324 (M.D. Fla. 2015), citing *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 n.25 (11th Cir. 2012).

Plaintiff does not plausibly allege that she experienced an injury as a result of the alleged deceptive or unfair practices she describes in Count I. Doc. 8 ¶¶ 28-32.  In paragraph 31, she states only that the Defendants' alleged practices have injured the public.  The specific allegations in paragraph 8 do not refer to an injury.  To the extent that the denial of her request for forbearance can be considered an injury, it is not causally linked to the alleged deceptive or unfair practices described in paragraph 25. Plaintiff has not stated a claim under FDUTPA.

Count II: Unjust Enrichment[5]

To state a claim for unjust enrichment, a plaintiff must allege: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that made it inequitable for him to retain it without paying the value

---

[5] Although Plaintiff identifies this as her "first" cause of action, it is the second cause of action listed in the Amended Complaint.  The Court will therefore refer to it as Count II.  Similarly, each subsequent count discussed in this Order will be identified sequentially rather than by the ordinal number Plaintiff has assigned to it.

thereof." *Longo v. Campus Advantage, Inc.*, 588 F. Supp. 3d 1286, 1297 (M.D. Fla. 2022), quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009).

The Amended Complaint alleges that Plaintiff made payments to SLS on her mortgage. Doc. 8 ¶¶ 8, 43.  It further alleges that SLS collected money from unlawful lawsuits, which it would be inequitable for SLS to retain. *Id.* ¶¶ 42, 45, 46.  But the complaint fails to connect these two ideas: it does not allege that the payments she made to SLS were unlawful nor offer any other reason that it would be inequitable for SLS to retain her payments, rather than the money SLS allegedly collected from lawsuits.  Therefore, Count II does not state a claim upon which relief may be granted.

### Count III: Fair Credit Extension Uniformity Act

This count is brought under 73 P.S. §§ 2270.01-2210.6, which is a Pennsylvania statute.  Thus, Plaintiff fails to state a cause of action under Florida or federal law.

### Count IV: Fair Debt Collection Practices Act

Count IV is brought under 15 U.S.C. § 1692 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA").  To prevail on a FDCPA claim, a Plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Smith v. ARS Nat. Servs. Inc.*, 102 F. Supp. 3d 1276, 1278 (M.D. Fla. 2015); *Kaplan v. Assetcare, Inc.*, 88 F.Supp.2d 1355, 1360-1361 (S.D. Fla. 2000).

The Amended Complaint alleges that Defendants were debt collectors and Plaintiff was a consumer within the meaning of FDCPA.[6] Doc. 8 ¶¶ 57, 61.   Its allegations as a whole can be fairly read to indicate that Plaintiff was the object of Defendants' collection activity.   However, the allegations as to the third element are deficient because they are merely recitations of violative conduct that is listed in the statute.   Paragraphs 62, 64, , 65, and 66 track the language of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f(1), respectively.   There are no factual allegations that explain the manner in which Defendants allegedly used false representations or deceptive means of collecting the debt, falsely represented an aspect of the debt, or attempted to collect an amount not authorized by the agreement.   Because allegations that amount to a recitation of the elements of a cause of action are insufficient, *see Twombly*, 550 U.S. at 555, this count fails to state a cause of action under the FDCPA.

<u>Count V: Reasonable or Detrimental Reliance</u>

Plaintiff's next claim is labeled "reasonable reliance; detrimental reliance." Doc. 8 ¶¶ 67-109.   Neither is the title of a cause of action that exists in Florida. Plaintiff's allegations for this count cite to several California state cases. *Id.* ¶¶ 86-98. Other allegations appear to be jury instructions, one of which refers to an unidentified individual named Alan Reynolds. *Id.* ¶¶ 80-85.   The remaining allegations, to the

---

[6] Defendants argue that Plaintiff's allegation that she took out the mortgage "as an investment loan" means that the mortgage does not qualify as consumer debt. Doc. 11 at 10. But Plaintiff also alleges that she later began living in the home. Doc. 8 ¶ 8. Defendants do not offer any authority holding that a mortgage initially taken out as an investment but that is subsequently used for household purposes falls outside of the FDCPA.   Absent any authority, the Court declines to make such a finding at the motion to dismiss stage.

extent they can be understood, appear to assert defenses that might be relevant to the judgment of foreclosure that Defendant obtained in state court. *Id.* ¶¶ 68-79. This count fails to comply with the requirement of Rule 8(a)(2) that a pleading contain a short and plain statement of the claim, and it does not state a claim upon which relief can be granted under Rule 12(b)(6).

<u>Count VI: Slander of Title</u>

Under Florida law, a slander of title action, also known as disparagement, requires the plaintiff to allege that: "(1) A falsehood (2) has been published, or communicated to a third person (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood." *Phillips v. Epic Aviation, LLC*, 234 F.Supp.3d 1174, 1206 (M.D. Fla. 2017), quoting *Bothmann v. Harrington*, 458 So.2d 1163, 1168 (Fla. 3d DCA 1984).

The Amended Complaint fails to allege that a falsehood induced others not to deal with Plaintiff. Doc. 8 ¶¶ 111-116. Further, the allegations with respect to the existence of a communication are contradictory, in that they allege that the deed and other documents "remained unrecorded," but that "[t]he act of recording" them constituted a communication. *Id.* ¶¶ 114, 116. This count fails to state a claim upon which relief can be granted.

### Count VII: Unconscionable Contract

In this count, Plaintiff alleges that a contract, presumably referring to the mortgage agreement, was unconscionable for various reasons, resulting in Plaintiff being forced or tricked into parting with her property. *Id.* ¶¶ 118-124. There is no cause of action for unconscionable contract; unconscionability is instead a defense to enforcing a contract or provision. To invalidate a contract under Florida law, there must be a showing of both procedural and substantive unconscionability. *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999). Procedural unconscionability analyzes the way the contract was entered considering the relative bargaining power of parties, the party's ability to understand the terms, and whether the party had a meaningful choice in entering the contract. *Id.* Substantive unconscionability analyzes the terms of the contract to examine whether they are unfair and unreasonable as to shock the conscience of the court. *Id.*

Plaintiff fails to state a claim in this count because there is no cause of action for an unconscionable contract. Moreover, she fails to allege any facts relating to substantive unconscionability, rather than procedural unconscionability. Doc. 8 ¶¶ 120-124. Accordingly, this count fails to state a claim.

### Count VIII: Breach of Contract

Plaintiff next alleges that the mortgage contract—the same one she labeled "unconscionable" in the previous count—was breached. "An adequately pled breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages." *Gelfound v. Metlife Ins. Co. Conn.*, 998 F. Supp. 2d 1356, 1359 (S.D.

Fla. 2014), quoting *Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4th DCA 2008). The Amended Complaint alleges that SLS breached the contract by allegedly failing to release the security interest in the deed when it sold the loan. Doc. 8 ¶¶ 126-129. But it does not allege that Plaintiff was injured by the alleged breach—for example, that she was entitled, under the terms of the contract, to receive the security interest. *Id.* Count VIII does not state a claim for breach of contract.

Count IX: Consumer Credit Protection Act

Next, the Amended Complaint alleges that Defendants violated 15 U.S.C. § 1641,[7] a statute known as the Truth In Lending Act, passed within the Consumer Credit Protection Act, which requires disclosure of certain credit information to protect consumers from uninformed debt. Section 1640(a) provides a private cause of action for an alleged violation of the act, in order "to create a system of private attorneys general to aid its enforcement." *McGowan v. King, Inc.*, 569 F.2d 845, 848 (5th Cir. 1978).[8] Section 1641(g) requires any new creditor or assignee of a debt to notify the borrower in writing of the transfer or assignment of the loan. Because statutory damages are available, *see* § 1640(a)(2), actual damages are not necessary for a plaintiff to state a claim under § 1641(g). *See Squires v. BAC Home Loans Servicing, LP*, No. 11-0413-WS-M, 2011 WL 5966948, *4 (S.D. Ala. Nov. 29, 2011).

---

[7] The Amended Complaint erroneously identifies the statute as 15 U.S.C. § 1461.
[8] Cases decided by the Fifth Circuit Court of Appeals before October 1, 1981, are binding precedent in the Eleventh Circuit today. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Here, Plaintiff alleges that Defendants did not disclose the "purported assignments/transfer of the Promissory Note and [Deed of Title]." Doc. 8 ¶ 134. Her allegations do not directly state to whom her mortgage loan was allegedly transferred or assigned. The exhibits identify the original lender as American Home Loans. Doc. 8-1 at 58, 71. Plaintiff alleges that the American Home Loans loan was transferred to MERS[9] without any recorded assignment, and that Wilmington "suddenly appeared as the real party in interest," without her knowledge of a transfer or sale of her loan. Doc. 8 ¶ 7. "Real party in interest" is a term used to refer to an actor with a substantive right whose interests may be represented in litigation by another. *U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 934-35 (2009). The Court therefore understands Plaintiff to be alleging that Wilmington is the new owner of the loan,[10] and that she did not receive notice of the assignment. Thus, Plaintiff has adequately stated a claim for a violation of 15 U.S.C. § 1641(g) as to Wilmington. As to SLS, however, the Amended Complaint is devoid of allegations from which the Court can infer that it (the loan servicer) was ever assigned the debt, such that it took on a disclosure obligation.

<u>Count X: Infliction of Emotional Distress</u>

In Count X, Plaintiff alleges that Defendants inflicted emotional distress both negligently and intentionally. Doc. 8 ¶¶ 136-139. Florida's courts recognize the tort of

---

[9] MERS, the Mortgage Electronic Registration System, is a registry of mortgages that is sometimes designated as an original lender in county land records.

[10] The Court also observes that Wilmington alleges in the complaint for the foreclosure action that it was assigned the mortgage debt. Doc. 11-2 ¶ 3.

intentional infliction of emotional distress. *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985). "To state a cause of action for intentional infliction of emotional distress, a complaint must allege four elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594 (Fla. 2d DCA 2007). The test to determine whether there was intentional infliction of emotional distress is whether such behavior is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* at 594 (quotation omitted). Outrageous conduct is a "particularly high" bar in Florida. *Patterson v. Downtown Medical and Diagnostic Center, Inc.*, 866 F. Supp. 1379, 1383 (M.D. Fla. 1994). Here, Plaintiff has not alleged that Defendants' conduct was outrageous, nor do the underlying allegations create such an inference. Therefore, she has not adequately pleaded intentional infliction of emotional distress.

Florida authorizes damages for the negligent infliction of emotional distress only where the plaintiff "manifests some physical injury as a result of the emotional trauma." *Noveshen v. Bridgewater Assocs., LP*, 47 F. Supp. 3d 1367, 1377 (S.D. Fla. 2014), quoting *Gonzalez–Jimenez de Ruiz v. United States*, 231 F.Supp.2d 1187, 1200–01 (M.D. Fla. 2002). "The elements required for this cause of action are: (1) the plaintiff must suffer a discernable physical injury; (2) the physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person." *LeGrande v. Emmanuel*, 889 So. 2d 991, 995 (Fla. 3d

DCA 2004).   Here, although Plaintiff alleges that she experienced physical injury, Doc. 8 ¶¶ 136-137, and that the collection scheme caused her emotional distress, *id.* ¶ 138, her allegations fail to plausibly establish that the physical injuries were caused by emotional distress.   Nor do the exhibits attached to the Amended Complaint contain an affidavit by Plaintiff, as alleged, that fills the gap. *See id.* ¶ 137.   Accordingly, Count X fails to state a claim for either type of infliction of emotional distress.

Count XI: Joint Action Under 42 U.S.C. § 1983

Section 1983 provides that a person may sue any person who deprives them of their rights under color of state law. 42 U.S.C. § 1983.   To recover on a § 1983 claim, a plaintiff must prove two elements: (1) that he was deprived of a right "secured by the Constitution and laws" of the United States; and (2) that the person depriving the plaintiff of that right acted "under color of state law." *Barton Protective Servs., Inc. v. Faber*, 745 So. 2d 968, 972 (Fla. 4th DCA 1999) (citations omitted).   "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Manufacturers Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).   To establish joint action, as Plaintiff alleges here, a plaintiff must show that the private party and the state official shared a common unlawful goal and agreed on a joint course of action in furtherance of that goal." *Barton*, 745 So.2d at 972.

Here, the Amended Complaint contains no allegations that Plaintiff was deprived of her rights under color of state law, or that Defendants acted jointly with a state official.   Plaintiff does not state a claim under § 1983.

<u>Count XII: Joint Action Under 18 U.S.C. §§ 241-242</u>

Count XII is brought under 18 U.S.C. §§ 241 and 242.  However, it is well settled that these statutes do not create a private right of action for damages. *See, e.g., U.S. ex rel. Stolls v. Martin*, No. 3:06CV179, 2006 WL 1883439, a*2 (N.D. Fla. July 7, 2006) (collecting cases).  Section 241 provides for criminal penalties but "does not authorize civil suits or give rise to civil liability." *Durso v. Summer Brook Preserve Homeowners Ass'n*, 641 F.Supp.2d 1256, 1267 (M.D. Fla. 2008) (quotation omitted; collecting cases).  Accordingly, Count XII does not state a claim upon which relief may be granted.

<u>Count XIII: Declaratory Relief</u>

The final count of the Amended Complaint seeks declaratory relief regarding ownership of the property.  The Declaratory Judgment Act provides, "In a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  The "threshold question" for a claim arising under the Declaratory Judgment Act is "whether a justiciable controversy exists," which determines whether the court has subject-matter jurisdiction. *Atlanta Gas Light Co. v. Aetna Cas. & Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995); *Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 248 F. Supp. 3d 1268, 1280 (M.D. Fla. 2017) (emphasizing that the "actual controversy" requirement is "jurisdictional" and a "threshold question in an action for declaratory relief") (internal quotation marks omitted).  Moreover, "[c]ourts retain broad discretion over whether or not to

exercise jurisdiction under the Declaratory Judgment Act." *New Mkt. Realty 1L LLC v. Great Lakes Ins. SE*, 341 F.R.D. 322, 325 (M.D. Fla. 2022).  The Act gives courts the ability to decide these issues but does not require that they do so. *Id.*

Here, the Court finds that there is not an active controversy that gives it jurisdiction under the Declaratory Judgment Act.  Even if there were, the Court would decline to exercise jurisdiction.   As Defendants have demonstrated through a document of which the Court can take judicial notice, there has been a final judgment of foreclosure concerning the property.  Any issues regarding its ownership should have been addressed in that proceeding or in an appeal.  The Court therefore finds that the issuance of declaratory relief is inappropriate.

### 3.   *Res Judicata and the* Rooker-Feldman *Doctrine*

Because the Court has found that 12 of the 13 counts in the Amended Complaint do not state a claim for relief, it need not resolve Defendants' arguments regarding collateral estoppel and the *Rooker-Feldman* doctrine. *See* Doc. 11 at 8-9.  Nor, unless the claims are more adequately pleaded, can the Court attempt to determine the application of either doctrine.

However, the Court observes that Defendants have not established that these doctrines would apply with respect to the sole count that successfully stated a claim, Count IX.  Specifically, they have not demonstrated that the issue of the notice Plaintiff received of the assignment of her mortgage loan to Wilmington was raised in the foreclosure action, such that it would be precluded in the instant action.

22

## CONCLUSION

The Amended Complaint is due to be dismissed as a shotgun pleading for the reasons discussed in the April 22, 2022 Order and in Section A, *supra*.   In the alternative, most of the counts are due to be dismissed under Rule 12(b)(6) for failure to state a claim, except for Count IX ("Consumer Credit Protection Act").   Because of Plaintiff's *pro se* status, however, the Court will dismiss the Amended Complaint without prejudice and give Plaintiff a final opportunity to amend.   Defendant's motion is therefore granted-in-part and denied-in-part.   If Plaintiff wishes to pursue her claims, she is ordered to file a Second Amended Complaint within 21 days that cures the defects identified in this Order and the April 22, 2022 Order.   As discussed in Section A, the action may be dismissed **with prejudice**[11] should Plaintiff fail to respond or to cure the defects.

Further, Plaintiff is also ordered to show cause as to why this Court should not dismiss this action because of her failure to prosecute and obey court orders.   The Court's Case Management and Scheduling Order directed the parties to participate in mediation. Doc. 11 at 1.   However, the parties' mediation was cancelled because of Plaintiff's failure to comply with her financial obligation to the mediator and her failure "to communicate in any way" with the mediator." Doc. 19.

A district court may dismiss a plaintiff's claims pursuant to Rule 41(b) of the Federal Rules of Civil Procedure or the court's inherent authority to manage its docket.

---

[11] A dismissal "with prejudice" means that the action is permanently dismissed and the claims cannot be re-filed.

*Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005).  Under Rule 41(b), "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss this action or any claim against it." Fed.  R.  Civ.  P.  41(b).  The Eleventh Circuit has recognized that a district court may dismiss an action *sua sponte* for the plaintiff's failure to prosecute his case or obey a court order under Rule 41(b). *Betty K Agencies, Ltd.*, 432 F.3d at 1337.

Here, Plaintiff has failed to prosecute this action or to comply with this Court's orders.  Therefore, she must show cause by filing a written response within 21 days explaining why the action should not be dismissed.  Plaintiff must demonstrate due diligence and just cause for her failure to participate in mediation or comply with this Court's orders. *See* Local Rule 3.10, Middle District of Florida.  The Court cautions Plaintiff that her failure to comply with any aspect of this Order will result in the action being dismissed without further notice.

Accordingly, it is **ORDERED**:

1. Defendants Specialized Loan Servicing, LLC and Wilmington Savings Fund Society's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 11) is **GRANTED-IN-PART**, to the extent that the Amended Complaint (Doc. 8) is **dismissed without prejudice**.

2. Plaintiff Milady Simpson is granted leave to file a Second Amended Complaint within **TWENTY-ONE (21) DAYS** from the date of this Order, which corrects the deficiencies discussed herein.  **Failure to file a Second**

**Amended Complaint that cures the defects within the time provided will result in dismissal of this action, <u>with</u> prejudice, without further notice.**

3. Plaintiff is also directed to **SHOW CAUSE**, within **TWENTY-ONE (21) DAYS,** as to why her claims against Defendants should not be **DISMISSED** for failure to prosecute.  **The failure to file a response within the time provided will result in the dismissal of this action without further notice.**

**DONE** and **ORDERED** in Tampa, Florida on March 22, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties